UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF
AMERICA,

       Plaintiff                    Civil Action No. 17-20712
                                Honorable Victoria A. Roberts
v.                              Magistrate Judge Elizabeth A. Stafford

THOMAS EDWARD
KEMP,

       Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS [ECF No. 17]

## I.    INTRODUCTION

Defendant Thomas Kemp moves to suppress his statement to ATF Agents Mark Jackson and Joseph Dynes that occurred during execution of a search warrant at his residence.  [ECF No. 17].  The government responded, and an evidentiary hearing was held on January 19, 2018, during which the agents and Kemp testified.  [ECF No. 22].  Following the hearing, Kemp and the government filed supplemental briefs.   [ECF Nos. 25, 27].  After considering their arguments, the Court finds that Kemp was in custody during the questioning, but that the government has met its burden of showing that he knowingly and voluntarily waived his *Miranda*

1

rights.  Therefore, the Court **RECOMMENDS** that Kemp's motion to suppress be **DENIED**.

## II.   BACKGROUND

During the execution of a search warrant at Kemp's residence on June 9, 2017, Agents Jackson and Dynes questioned Kemp regarding certain firearms transactions.  [ECF No. 26, PageID 136, 139-40, 183]. Agent Jackson estimated that the interview lasted between 30 and 45 minutes, while Agent Dynes thought that it was between 45 minutes and one hour.  [*Id.*, PageID 148, 213].  Kemp testified that the interview lasted approximately two hours.  [*Id.*, PageID 239].  The interview was conducted outside on the front porch of the residence.  [*Id.*, PageID 145].  Agent Jackson said that the location of the interview was Kemp's suggestion, but also because "[w]e wanted to get him away from his brother and the dogs were locked in a room and there was really no other suitable place to sit down and talk to him privately."  [*Id.*].

Agent Jackson testified that, at the start of the interview, he read Kemp his *Miranda* rights off of a card he keeps in his wallet; the government attached a copy of that card to its response to the motion to suppress.  [*Id.*, PageID 150; ECF No. 22-2].  Agent Dynes corroborated Agent Jackson's testimony.  [ECF No. 26, PageID 208].  But Kemp claimed

2

that the agents never advised him of his rights, and that he would not have spoken to the agents had they done so.  [*Id.*, PageID 240].  Yet, he acknowledged that he was aware of the *Miranda* rights, including the right to remain silent, the right to an attorney, and that "[a]nything you say will be held against you in court."  [*Id.*, PageID 239-40].  He had seen police shows in which people sometimes refused to speak to the police or asked for a lawyer.  [*Id.*, PageID 243].  Despite being aware of those options, Kemp admitted that he did not tell the agents that he wanted to stop talking or ask for a lawyer.  [*Id.*, PageID 243-44].  He did exercise his right to refuse to sign a written statement.  [*Id.*, PageID 244].

Agents Jackson and Dynes testified that after Kemp was read his rights, Agent Jackson asked if he understood those rights and wished to waive them and speak to him, and that Kemp answered in the affirmative. [*Id.*, PageID 152, 209, 225, 228].  Agent Jackson then questioned Kemp, and Kemp made incriminating statements.  [ECF No. 17, PageID 51]. Agent Jackson testified that he intended to record the interview, as he considered Kemp to be in custody, but that the recorder had malfunctioned and failed to record.  [ECF No. 26, PageID 158].  His written notes do not refer to the reading of *Miranda* rights; he testified that he would not normally include that in his notes.  [*Id.*, PageID 159].  Agent Dynes also

3

took written notes about the interview, but he later lost them.  [*Id.*, PageID 214-16].[1]  Agent Dynes said that he used his notes to write the incident report, which states, "S/A Jackson advised KEMP of his Miranda Rights, which Kemp verbally waived."[2] [*Id.*, PageID 218].

Agent Jackson described Kemp as being in "custody" during the interview, and Agent Dynes said that Kemp was "detained" at that time. [*Id.*, PageID 158, 186, 211].

## III.   ANALYSIS

Under the Fifth Amendment, no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V. Prior to a custodial interrogation, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  These rights may be waived, but the waiver must be voluntary and knowing.  *Id.*  Waiver can be inferred when a defendant is properly informed of his rights, indicates that he understands them, and "nevertheless does nothing to invoke those rights" by speaking.  *United*

---

[1] *See* ECF No. 24 (addressing Agent Dynes lost rough notes).
[2] This report was provided to the Court at the hearing.

*States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (internal citation and quotation marks omitted).  Waiver need not be expressly made or in writing, but can be implied by "the actions or words of the person interrogated."  *Id.* (internal citation and quotation marks omitted).

Kemp argues that his incriminating statements to the agents should be suppressed because he was interrogated while he was in custody but not properly advised of his Fifth Amendment rights.  The Court agrees that Kemp was in custody, but finds unconvincing his claim that he was not properly advised of his rights.

**A.**

A *Miranda* warning is only required during a "custodial interrogation." *Miranda*, 384 U.S. at 444.  To determine whether an encounter was custodial or non-custodial, courts must consider "all of the circumstances surrounding the interrogation."  *Stansbury v. California*, 511 U.S. 318, 322 (1994).  But "the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *Id.* (internal citations, brackets, and quotation marks omitted).  This inquiry is guided by several factors: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and

5

whether the individual was told she need not answer the questions."
*United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009).  Kemp bears the
burden of demonstrating by a preponderance of the evidence that he was
in custody at the time of the interrogation.  *United States v. Sydnor*, No.
6:16-CR-21-ART-HAI-2, 2016 WL 8672913, at *5 (E.D. Ky. Dec. 9, 2016);
*United States v. Neeley*, No. CRIM. 09-17-GFVT, 2009 WL 4015947, at *6
(E.D. Ky. Nov. 19, 2009).  He has met his burden.

Arguing otherwise, the government first notes that the interview took
place at Kemp's residence, which "often will not rise to the kind of custodial
situation that necessitates *Miranda* warnings."  *Panak*, 552 F.3d at 466.  It
also cites cases finding interrogations lasting from 45 minutes to an hour
and a half to be non-custodial.  *Id.* at 467; *United States v. Crossley,* 224
F.3d 847, 862 (6th Cir. 2000); *United States v. Mahan,* 190 F.3d 416, 420,
422 (6th Cir. 1999).  But the evidence supports Kemp's argument that his
freedom was fully restrained during the interrogation, rendering it custodial.

In *New York v. Quarles*, 467 U.S. 649, 655 (1984), the Supreme
Court found that the respondent was in police custody when he was
"surrounded by at least four police officers and was handcuffed when the
questioning at issue took place."  The Sixth Circuit likewise recently found
there to be "no dispute that [the defendant] was handcuffed at the time and,

6

thus, 'in custody' for *Miranda* purposes." *United States v. Ray*, 690 F. App'x 366, 372 (6th Cir. 2017). The government cites *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999), but that case pertained to whether the use of handcuffs transformed an investigatory stop into an arrest for Fourth Amendment purposes. The government does not cite precedent that interpreted *Miranda* or its progeny to support its claim that Kemp was not in custody while he was handcuffed.

The government emphasizes Agent Jackson's testimony that it was Kemp's idea to conduct the interview outside, and that Kemp would have been allowed to go inside to use the restroom had he requested to do so. [ECF No. 27, PageID 256-57, citing ECF No. 26, PageID145, 200]. But Agent Jackson also testified that Kemp was not "allowed to go anywhere" even if he had not been handcuffed. [ECF No. 26, PageID 186]. The totality of these circumstances lead the Court to conclude that Kemp's freedom was restrained such that he was in custody for the purposes of *Miranda* at the time of the questioning.

**B.**

The Court must next address whether Kemp knowingly and voluntarily waived his *Miranda* rights before speaking to Agents Jackson and Dynes. *Moore v. Berghuis*, 700 F.3d 882, 887 (6th Cir. 2012). Waiver

7

must be "voluntary in the sense that it was the product of a free and

deliberate choice rather than intimidation, coercion, or deception," and

"made with a full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it." *Moran v.*

*Burbine*, 475 U.S. 412, 421 (1986). The government bears the burden of

establishing by a preponderance of the evidence that a waiver occurred.

*Colorado v. Connelly*, 479 U.S. 157, 167-68 (1986).

Here, the first question is whether the Agent Jackson read Kemp his

*Miranda* rights; Agents Jackson and Dynes claim that he did, and Kemp

claims otherwise. The Court must make a finding of fact anchored in its

credibility assessments of those who testified at hearing to determine

whether the *Miranda* rights were read. *United States v. Taylor*, 956 F.2d

572, 576 (6th Cir. 1992).

The Court finds that the government has shown by a preponderance

of the evidence that Agent Jackson read Kemp his *Miranda* rights. That

evidence includes both agents' testimony that Agent Jackson read Kemp

his *Miranda* rights from the card that Agent Jackson keeps in his wallet,

and that Kemp responded affirmatively when asked if he understood his

rights, and wished to waive them and talk to the agents. [ECF No. 26,

PageID 152, 209, 225, 228]. To corroborate the agents' testimony, the

8

government presented the card from which Agent Jackson read the *Miranda* warnings, and Agent Dynes' incident report that stated that Agent Jackson advised Kemp of his rights, and that Kemp waived them. [*Id.*, PageID 150, 218; ECF No. 22-2]. Kemp emphasizes that the agents do not remember the exact words with which he responded when read his rights, but that is not surprising given that the interrogation occurred months prior to the hearing. [*See* ECF No. 25, PageID 116, 118-19, citing ECF No. 26, PageID 152, 209, 225, 228]. The Court finds the agents' testimony to be credible.

In contrast, Kemp's testimony was internally contradictory and, thus, not credible. He testified that he was familiar with the *Miranda* rights, "or the rights that you have as a criminal defendant," accurately identifying them as "the right to remain silent," "right to an attorney," and that anything you say can be used against you in court. [*Id.*, PageID 239-40]. He stated that he learned this from "[b]asically just watching TV" and that he was aware of these rights before he was interviewed by the agents in June 2017. [*Id.*, PageID 239-40, 242]. Kemp testified that he had seen police shows in which people sometimes refused to speak to the police or asked for a lawyer. [*Id.*, PageID 243]. Despite being aware of those options, Kemp also claimed he would not have spoken to the agents if they had

9

informed him of his *Miranda* rights.  [*Id.*, PageID 242].  Yet, Kemp knew

that he had the right to refuse to sign a written statement, and he exercised

that right.  [*Id.*, PageID 244].  Kemp understood that he had the right to

refuse to make a statement the agents, and his testimony that he would

have refused to speak to them if they informed him of those rights is not

believable.

To be sure, the agents were required to inform Kemp of his *Miranda*

rights even though he had heard them on the televisions.  *United States v.*

*Cruz*, 838 F. Supp. 535, 541 (D. Utah 1993) ("[A]ny reference to what

someone may have heard on television is insufficient to meet *Miranda*

standards.").  The Court does not find that Kemp's prior awareness of his

rights would have been sufficient.  But the Court can consider its finding

that Kemp's testimony lacked credibility.  *Doss v. Burt*, No. 01-10382-BC,

2006 WL 680836, at *16 (E.D. Mich. Mar. 14, 2006) (trial court properly

found that defendant's statement was voluntary after determining that his

testimony was "wholly incredible, self-serving, and not worthy of belief.").

In light of the finding that Agent Jackson properly warned Kemp of his

*Miranda* rights, an inference can be made that he waived them by speaking

the agents.  "[A] *Miranda* 'waiver may be clearly inferred ... when a

defendant, after being properly informed of his rights and indicating that he

10

understands them, nevertheless does nothing to invoke those rights' and speaks." *Adams*, 583 F.3d at 467 (quoting *United States v. Nichols*, 512 F.3d 789, 798-99 (6th Cir.2008)). It is undisputed that Kemp never asserted his rights to stop speaking to the agents or to ask for an attorney.

Kemp emphasizes that he did not sign a written or audio recording of his waiver of his *Miranda* warnings, but that type of evidence is not required. *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002). In *Miggins*, the court found that the defendant had knowingly, voluntarily, and intelligently waived his *Miranda* rights when the officer had orally advised the defendant of his rights, and the defendant stated that he understood them. *Id.* The court rejected the defendant's argument that a written *Miranda* waiver was required, noting that the defendant offered "no authority, and none can be found, for the proposition that a written waiver is necessary to establish a knowing, intelligent and voluntary waiver of *Miranda* rights." *Id.* In the same vein, the court in *Adams* upheld the denial of a motion to suppress despite the lack of a written waiver of *Miranda* rights. "[A] waiver of *Miranda* rights need not be made in writing, and need not be expressly made." *Adams*, 583 F.3d at 467.

And while Kemp argues that the government failed to demonstrate that his statement was not the product of coercion, "[t]here is nothing in the

11

record to indicate that [Kemp's] will was overborne such that he was coerced into making statements." *Miggins*, 302 F.3d at 397.  To the contrary, the evidence that Kemp refused to sign a written statement shows that he was acting with free will.

For these reasons, the Court credits the testimony of Agents Jackson and Dynes that Kemp was read his *Miranda* rights, that he affirmed his understanding of them, and that he knowingly and voluntarily waived them in choosing to speak with the agents.  His motion to suppress should be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Kemp's motion to suppress [ECF No. 17] be **DENIED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: April 19, 2018

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

13

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 19, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

14