UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 17-20712
                                              Honorable Victoria A. Roberts

THOMAS EDWARD KEMP,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S**
**MOTION TO SUPPRESS [ECF No. 17]**

**I.    INTRODUCTION**

This matter is before the Court on Defendant Thomas Edward Kemp's Objections to United States Magistrate Judge Elizabeth A. Stafford's Report and Recommendation ("R&R"). Magistrate Judge Stafford recommended that Kemp's motion to suppress be denied. Defendant raises three objections to the R&R.

This court reviews *de novo* "any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1). Based on that *de novo* review, and for the reasons set forth below, the Court overrules Defendant's objections and adopts the R&R in its entirety.

## II.     BACKGROUND

The facts of this case were accurately stated in the R&R, many of which the Court restates here.

During the execution of a search warrant at Kemp's residence on June 9, 2017, ATF Agents Jackson and Dynes questioned Kemp regarding certain firearms transactions. Agent Jackson estimated that the interview lasted between 30 and 45 minutes; Agent Dynes thought that it lasted between 45 minutes and one hour. Kemp testified that the interview lasted approximately two hours. The interview was conducted on the front porch of Kemp's home. Agent Jackson said that the location of the interview was Kemp's suggestion, but also because "[w]e wanted to get him away from his brother and the dogs were locked in a room and there was really no other suitable place to sit down and talk to him privately." [ECF No. 26, PageID 145].

Agent Jackson described Kemp as being in "custody" during the interview; Agent Dynes said that Kemp was "detained" at that time. [*Id.*, PageID 158, 186, 211].

Agent Jackson testified that, at the start of the interview, he read Kemp his *Miranda* rights from a card he keeps in his wallet; the Government attached a copy of that card to its response to the motion to suppress. Agent Dynes corroborated Agent Jackson's testimony.

Agents Jackson and Dynes testified that after Kemp was read his *Miranda* rights, Agent Jackson asked if he understood those rights and if he wanted to waive them and speak to him, and that Kemp responded affirmatively. Agent Jackson then questioned Kemp, and Kemp made incriminating statements. Agent Jackson testified that he

intended to record the interview since he considered Kemp to be in custody, but that the recorder malfunctioned and failed to record. His written notes do not refer to the reading of *Miranda* rights; he testified that he would not normally include that in his notes. Agent Dynes also took written notes about the interview, but lost them. Agent Dynes said that he used his notes to write the incident report. That report states, "S/A Jackson advised Kemp of his Miranda Rights, which Kemp verbally waived." [*Id.*, PageID 218].

Kemp tells a different story. He claims that the agents never advised him of his rights, and that he would not have spoken to them had they done so. Yet, he acknowledged that he was aware of his *Miranda* rights, including the right to remain silent, the right to an attorney, and that "[a]nything you say will be held against you in court." [*Id.*, PageID 239-40]. He had seen police shows in which people sometimes refused to speak to police or asked for a lawyer. Despite being aware of these options, Kemp admitted that he did not tell the agents that he wanted to stop talking or ask for a lawyer. He did exercise his right to refuse to sign a written statement.

Kemp objects to the Magistrate Judge's findings that (1) the Government has shown by a preponderance of the evidence that Agent Jackson read Defendant his *Miranda* rights; (2) Defendant responded affirmatively when asked if he understood his rights; and (3) that in light of the finding that Agent Jackson properly warned Defendant of his *Miranda* rights, an inference can be made that he waived them by speaking to the agents. Since neither the Government nor Defendant raised any other objections, the Court reviews these objections assuming that Defendant was in official police custody and subject to custodial interrogation.

## III. ANALYSIS

A defendant's incriminating statements may only be admitted as evidence if the defendant has been "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). The defendant may waive these rights as long as the waiver is knowing, intelligent, and voluntary. *Id.* "For a waiver to be knowing and intelligent, the suspect must be fully advised of his constitutional privileges. To be voluntary, a confession may not be 'the product of coercion, either physical or psychological.'" *Hill v. Anderson*, 881 F.3d 483, 502 (6th Cir. 2018) (citation omitted).

"It is the government's burden to establish a waiver by a preponderance of the evidence." *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009); *see also Colorado v. Connelly*, 479 U.S. 157, 168, 107 S. Ct. 515, 522, (1986). In other words, the Government must show that it is more likely than not that the defendant gave a waiver.

### A. Kemp was properly advised of his *Miranda* rights.

Defendant contends that the Government failed to corroborate Agents Dynes' and Agent Jackson's testimony that they advised Kemp of his constitutional privileges under *Miranda*. Defendant also objects to the finding that he responded affirmatively when asked if he understood those rights. Defendant cites the absence of any mention of *Miranda* rights in Agent Jackson's notes from the interview, the lack of an audio recording, and the agents' failure to provide Kemp with a written waiver form. The

Government contends that Agent Jackson does not typically make a note regarding *Miranda* rights, and that he intended to record the interview, but the audio recorder failed. The Government also argues, correctly, that no written form is required for a defendant to waive *Miranda* rights. *Adams*, 583 F.3d at 467 (citation omitted) (a *Miranda* waiver "need not be made in writing, and need not be expressly made.").

Since no note, audio recording, or written form is available to corroborate that Agent Jackson read Kemp his *Miranda* rights, the Court must assess the credibility of testimony at the evidentiary hearing to determine if the Government met its burden. *See United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990). The Magistrate Judge credited the agents' testimony over Kemp's. To challenge this credibility finding, Defendant must show that it is clearly erroneous. *Id.* Defendant fails to do so.

The evidence supports a finding that Agent Jackson read Kemp his *Miranda* rights and that Kemp responded affirmatively when asked if he understood those rights. Agent Jackson produced the card from which he read Kemp his *Miranda* rights. Importantly, Agent Dynes included in his contemporaneous incident report that Agent Jackson advised Kemp of his rights.

Kemp's testimony is far less credible. Kemp testified that he understood his *Miranda* rights from watching television, and he was able to recite those rights in court. Despite his apparent awareness of those rights, Kemp claims that he would not have spoken to the agents had they given the appropriate warnings before his interview. To be sure, law enforcement is still required to apprise the accused of his *Miranda* rights regardless of whether he is already aware of those rights, and the burden lies with the Government to show that law enforcement carried out this duty. It is certainly possible

5

that an individual can understand his *Miranda* rights and nonetheless forget to exercise them during an interrogation. But Kemp's testimony is not enough to outweigh Agent Dynes' notes from the incident indicating that Agent Jackson advised Kemp of his *Miranda* rights, and the fact that Kemp did exercise one of his *Miranda* rights (to refuse to sign a written statement), even though he says he was not properly informed.

One other court in this district did find the lack of an audio recording, notes, or a written waiver, as indicative of an agent's failure to give *Miranda* warnings. *See United States v. Lewis*, 355 F. Supp. 2d 870, 873 (E.D. Mich. 2005). In *Lewis*, the circumstances of the defendant's interview and incriminating statements were different than Kemp's: the interview was conducted in a government building; recording equipment was readily available, but not used; no officer signed a waiver form that was offered to the defendants, and one of the officers involved had previously been criticized for failure to record an interview to show that he had given *Miranda* warnings. *Id.*

In Kemp's case, the interview was conducted in the field, the audio recorder malfunctioned, and since the agents provided no waiver form, it is not suspicious that they did not sign one. While the benefits of an audio or video recording are readily apparent – and would effectively eliminate the "swearing contests" about what happened during an interrogation – it is simply not a requirement that the Court is willing to impose today. *See Lewis*, 355 F. Supp. 2d at 873 (citation omitted).

The evidence shows that it is more likely than not that Agent Jackson advised Kemp of his *Miranda* rights and that Kemp responded affirmatively when asked if he understood those rights. Furthermore, Kemp failed to show that the Magistrate Judge's

credibility determinations were clearly erroneous. Accordingly, the Court rejects Defendant's first and second objections.

### B. Kemp gave a valid waiver of his *Miranda* rights.

"Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384, 130 S. Ct. 2250, 2262 (2010). Defendant asserts that his statements to Agents Jackson and Dynes were made in an "environment of coercion," therefore invalidating any implied *Miranda* waiver.

Defendant argues that the same factors used to determine whether Kemp was "in custody" at the time of questioning also serve to establish this "environment of coercion." The Court disagrees. The factors guiding whether a defendant is "in custody" are: (1) the location of the interview, (2) the length and manner of the questioning, (3) whether defendant possessed unrestrained freedom of movement during the interview, and (4) whether the defendant was told he need not answer the questions. *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). Defendant cites no authority equating these guiding circumstances for whether a defendant is "in custody" with whether a defendant was subject to an "environment of coercion," and this Court refuses to equate the two analyses.

Further harmful to Kemp's claim that he was subject to an "environment of coercion" is the Supreme Court's holding in *Berghuis*, where the defendant was interrogated for three hours in a straight-backed chair in a small room. *Berghuis* 560

U.S. at 386-87, 130 S. Ct. at 2263. Even at Kemp's highest estimate, his interview lasted two hours. This Court does not see how Kemp's interview is any more coercive than the interview in *Berghuis*, and declines to find that his statements are the product of coercion.

Accordingly, the Court rejects Defendant's third objection, and finds that Kemp gave a valid waiver of his *Miranda* rights.

## IV. CONCLUSION

Agent Jackson properly advised Kemp of his *Miranda* rights, Kemp responded affirmatively when asked if he understood those rights, and Kemp gave a valid waiver of those rights when he made incriminating statements to Agents Jackson and Dynes. Accordingly, Kemp's motion to suppress is **DENIED**.

**IT IS ORDERED.**

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: June 29, 2018